UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TIMOTHY JAMES HASSETT,

      Plaintiff,

v.                                                Case No. 1:12-cv-419
                                              Hon. Robert J. Jonker

COMMISSIONER OF SOCIAL
SECURITY,

      Defendant.

_____/

**REPORT AND RECOMMENDATION**

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of Social Security (Commissioner) that plaintiff was overpaid disability insurance benefits in the amount of $30,582.30.

**I.    Background**

Plaintiff was found disabled under the Social Security Act with a diagnosis of rheumatoid arthritis and awarded disability insurance benefits (DIB) with an onset date August 10, 1990 (AR 64). The present dispute arises from plaintiff's participation in the "Ticket to Work" program (sometimes referred to as "TWP") (AR 49-50). *See generally,* 42 U.S.C. § 1320b-19(a) (providing that "[t]he Commissioner shall establish a Ticket to Work and Self-Sufficiency Program, under which a disabled beneficiary may use a ticket to work and self-sufficiency issued by the Commissioner in accordance with this section to obtain employment services, vocational rehabilitation services, or other support services from an employment network which is of the beneficiary's choice and which is willing to provide such services to such beneficiary").

According to a pamphlet provided to plaintiff by the Social Security Administration (SSA), "[t]he goal of the Ticket to Work is to help you go back to work if you want to, or to help you earn more money if you're already working" (AR 49). The pamphlet also stated that "your Social Security or Supplemental Security Income (SSI) cash benefits may continue while you work, depending on your earnings" and that "we will not review your disability as long as you are making progress in the Ticket to Work program" (AR 49). Plaintiff returned to work in or about May 2005 (AR 73, 145). In a Notice of Proposed Decision dated January 25, 2008, the SSA advised plaintiff that his disability ended "because of substantial work" in February 2006 and that he was not entitled to payments as of May 2006 (AR 73). A few weeks later, plaintiff received a Notice of Disability Cessation dated February 16, 2008, which stated that his payments continued during a 9-month trial work period which ended in January 2006, that he was not entitled to payments beginning in May 2006 because he was "doing substantial work" and that he owed an overpayment in the amount of $30,582.30 which was due on March 20, 2008 (AR 77-82). Plaintiff filed a request for a waiver of overpayment in May 2008 (AR 126-33). However, the request was denied on May 29, 2008 (AR 68-69).

Plaintiff was scheduled for a "Special Determination" hearing on June 20, 2008 (AR 71-73). In the "Special Determination" entered on July 3, 2008, an SSA claims representative (Heather) made the following "Statement of Facts":

> Mr. Timothy Hassett has been receiving Social Security Disability benefits since 2/1991. He returned to substantial work in 2005 through the Ticket to Work Program, administered through Michigan Rehabilitation Services (MRS). He earned the following amounts: in 2005 $21776.76; in 2006 he earned $38376.65; in 2007 he earned $39440.31. He is still working substantially. Mr. Hassett states that to his understanding, as long as he was under the Ticket to Work, he was allowed to work & earn as much as he wanted to for 5 years, and then his disability benefits would terminate. I contacted his caseworker at MRS, Micke Harsini, on 7/2/2008

2

>and Mr. Harsini stated that all MRS counselors firmly explain to their clients that any work they perform can affect their Social Security Disability benefits & that clients are aware that there are limits to how much they can earn. He stated that though the specific MRS counselors such as himself may not know the exact earnings limits, they refer individuals who are working to SSA and/or to a specific person within MRS that can explain the specific earnings to the client, if they so choose. He also stated that Mr. Hassett is a smart man & that he had to know that there were limits to how much he could earn. Mr. Hassett stated that because he received letters every year that stated Social Security reviewed his case & was increasing his benefit amount (the Cost-of-Living letters), he believed the must be eligible to continue receiving his benefits.

(AR 72).

Based on these facts, Heather found that plaintiff was not without fault in causing the overpayment:

>Mr. Hassett cannot be found without fault in causing the overpayment. His overpayment is specifically due to his work, and he did not exercise proper care in adhering to Social Security regulations. The information regarding earnings limits was readily available to him & he was informed both by Social Security & by MRS that his earnings have the ability to affect his Social Security benefits.

(AR 72).

Plaintiff sent correspondence to the SSA contesting this finding. The SSA treated this correspondence as a request for an administrative hearing on the waiver decision (AR 103-21). A hearing was held before an Administrative Law Judge (ALJ) on December 9, 2009 (AR 205-38). At the hearing, plaintiff waived his right to representation and advised the ALJ that he wanted to proceed *pro se* (AR 207-08).

In a decision entered on December 29, 2009, the ALJ found:

1. The claimant was incorrectly paid Disability Insurance Benefits for the period May 2006 through January 2008 because of engaging in substantial gainful activity after his trial work period. He was overpaid $30,582.30.

3

2. The claimant was not without fault in causing and accepting the overpayment (20 CFR 404.507).

3. Recovery of the overpayment is not waived (20 CFR 404.506).

(AR 62-63). Based on these findings, the ALJ entered a decision "that the claimant was overpaid $30,582.30 in Disability Insurance Benefits, that he was not without fault in causing and accepting the overpayment, and that, therefore, recovery of the overpayment is not waived" (AR 63). This decision, which was later approved by the Appeals Council, has become the final decision of the Commissioner and is now before the Court for review.

## II. LEGAL STANDARD

The court must affirm the Commissioner's determination regarding overpayment of disability benefits unless the SSA failed to apply the correct legal standards or made findings of fact unsupported by substantial evidence. 42 U.S.C. §405(g) (1983); *Salamalekis v. Commissioner*, 221 F. 3d 828, 829-30 (6th Cir. 2000). "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Secretary of Health & Human Services*, 25 F.3d 284, 286 (6th Cir. 1994). A determination of substantiality of the evidence must be based upon the record taken as a whole. *Young v. Secretary of Health & Human Services*, 925 F.2d 146 (6th Cir. 1990).

The scope of this review is limited to an examination of the record only. This Court does not review the evidence *de novo*, make credibility determinations or weigh the evidence. *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the

4

record. *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). Even if the reviewing court would resolve the dispute differently, the Commissioner's decision must stand if it is supported by substantial evidence. *Young*, 925 F.2d at 147.

The present case involves an overpayment of benefits to plaintiff. Under the Social Security Act, "[w]henever the Commissioner of Social Security finds that more or less than the correct amount of payment has been made under this subchapter, proper adjustment or recovery shall be made, under regulations prescribed by the Commissioner of Social Security." 42 U.S.C. § 404(a)(1). An exception for the repayment of overpayments exists under 42 U.S.C. § 404(b), which provides in pertinent part that :

> In any case in which more than the correct amount of payment has been made, there shall be no adjustment of payments to, or recovery by the United States from, any person who is without fault if such adjustment or recovery would defeat the purpose of this subchapter or would be against equity and good conscience.

42 U.S.C. § 404(b). *See Valley v. Commissioner of Social Security*, 427 F.3d 388, 391 (6th Cir. 2005) ("[t]he Social Security Act mandates repayment of overpayments except where an individual 'is without fault' and 'such adjustment or recovery would defeat the purpose of [Title II of the Social Security Act] or would be against equity and good conscience' ") (quoting 42 U.S.C. § 404(b)).

In cases involving the recovery of overpayments, the plaintiff has the burden of establishing the "negative prerequisite" (i.e., that he was without fault) before the overpayment can be waived. *Watson v. Sullivan*, 940 F.2d 168, 171 (6th Cir. 1991). *See Posnack v. Secretary of Health and Human Servs.*, 631 F. Supp. 1012, 1015 (E.D.N.Y 1986) (a plaintiff must first demonstrate that he or she was without fault in receiving the overpayment). "The question of fault is one of fact and as such is subject to the substantial evidence standard of review." *Doan v.*

5

*Secretary of Health and Human Services*, No. 86-5956, 1987 WL 36143 at *1 (6th Cir. July 7, 1987), citing *Morgan v. Finch*, 423 F.2d 551 (6th Cir. 1970). An ALJ's finding of "fault" in the context of an overpayment does not imply a finding of bad faith, but can be the result of an honest mistake. *Morgan*, 423 F.2d at 553. If there is substantial evidence to support a finding that the plaintiff is "not without fault", then the court does not need to determine whether recovery would be against equity and good conscience or would defeat the purposes of the Act. *Id.*

If the plaintiff has established that he is without fault, he must then demonstrate that the recovery of the overpayment would defeat the purposes of Title II ([42 U.S.C. §§ 401-403) or that recovery of the overpayment would be against equity and good conscience. *Watson*, 940 F.2d at 171; *Pliley v. Sullivan*, 892 F.2d 35, 39 (6th Cir. 1989); *Posnack*, 631 F. Supp. at 1015.

"Defeating the purpose of Title II means 'depriving a person of income required for ordinary and necessary living expenses.' 20 C.F.R. § 404.508(a)." *Valley*, 427 F.3d at 391. Recovery of an overpayment "will defeat the purposes of title II in (but is not limited to) situations where the person from whom recovery is sought needs substantially all of his current income (including social security monthly benefits) to meet current ordinary and necessary living expenses." 20 C.F.R. § 404.508(b). "In making this determination, the Administration may look to the individual's financial resources in addition to her or his income." *Valley*, 427 F.3d at 391, citing 20 C.F.R. § 404.508(a).

"Recovery of an overpayment is against equity and good conscience where the individual 'changed his or her position for the worse. . . or relinquished a valuable right. . . because of reliance upon a notice that a payment would be made or because of the overpayment itself. . . .'" *Id.* at 392, quoting 20 C.F.R. § 404.509(a)(1). In addition, a claimant may

6

demonstrate that recovery of an overpayment is against equity and good conscience where the individual "accepts such overpayment because of reliance on erroneous information from an official source within the Social Security Administration . . . with respect to the interpretation of a pertinent provision of the Social Security Act or regulations pertaining thereto. . . ." *Id.* at 392-93, quoting 20 C.F.R. §§ 404.510a; 404.512. However, the claimant's individual financial circumstances "are not material to a finding of against equity and good conscience." *Id.* at 393, quoting 20 C.F.R. § 404.509(b).

### III. Discussion

Plaintiff has raised three arguments on appeal.

#### A. Whether it was established that Timothy Hassett was not at fault in causing the overpayment by the Commissioner?

In determining whether plaintiff was "without fault," the ALJ tracked the history of plaintiff's work history and contact with the SSA in detail. Rather than summarize this history, the court will incorporate the ALJ's recitation of the underlying facts:

> On June 25, 1991 the claimant filed for Disability Insurance Benefits (Exhibit 1D). He was found disabled with an onset date of August 10. 1990. The claimant's diagnosis was rheumatoid arthritis (Exhibit 1A).
>
> In April 1995 a medical continuing disability review (CDR) was completed by the State Agency. A notice was sent to the claimant stating his disability continued and it explained the trial work period provisions and SGA amounts.
>
> In January 2008 the claimant was sent a Notice of Proposed Decision. It was stated the claimant returned to work for Duncan Aviation Corporation effective May 2005. It was noted the claimant's trial work period months were May 2005 through January 2006. It was stated the claimant's EPE [extended period of eligibility] started February 2006 and he was engaging in SGA for February 2006 and continuing. It was reported the claimant was not entitled to payments for May 2006 and continuing (Exhibit 1B). In February 2008, the claimant was sent a Notice of Disability Cessation stating he was not due any Disability Insurance Benefits beginning May 2006. It noted the claimant was overpaid $30,582.30 (Exhibit 2B).

In May 2008, the claimant filed a request for waiver of overpayment. He stated the overpayment was not his fault and he could not afford to pay it back. He reported he notified the Administration of his work activity (Exhibit 2D). The request for waiver was denied.

On June 20, 2008, the claimant had a personal conference at the Battle Creek, Michigan District Office. He stated that, since he was working under the Ticket to Work Program, he thought it did not matter how much money he earned. The claimant reported he thought he was able to work for five years without it affecting his Disability Insurance Benefits. He stated his caseworker was Mike Harsini of the Michigan Rehabilitation Services (MRS) (Exhibit 3D).

In July 2008, Mr. Harsini reported that it was the practice for Michigan Rehabilitation Services workers to inform their clients that there are SGA limits and always tell them that their earnings can affect their social security benefits. In addition, he stated that, if the claimants have questions on earnings limits, the MRS has a specific counselor who is familiar with the limits and/or they refer them to the Social Security Administration (Exhibit 4D). It was determined by the Field Office that the claimant was not without fault in causing the overpayment (Exhibit 4A).

The pertinent period under review, benefits paid and due are disclosed here:

| Month | Amount Paid | Amount Due | Amount Overpaid |
|---|---|---|---|
| 05/06-11/06 | $1373.50 | 0.00 | $9614.50 |
| 12/06-12/06 | $1419.50 | 0.00 | $1419.50 |
| 01/07-11/07 | $1498.50 | 0.00 | $16,483.50 |
| 12/07-01/08 | $1532.40 | 0.00 | $ 3064.80 |

**TOTAL OVERPAYMENT = $30,582.30**

The claimant testified he has a four year college degree. He stated he received Disability Insurance Benefits due to rheumatoid arthritis. The claimant testified he is currently working and earns about $21.00 per hour. He stated his wife also works. The claimant testified he notified the Administration every time he moved and also when he returned to work. He stated that he thought he was able to work for five years before it would affect his Disability Insurance Benefits. Stacy Hassett, the claimant's wife, testified the claimant never received notification of the SGA amounts.

(AR 61-62).

Based on these facts the ALJ made the following determinations:

>           The undersigned has considered the claimant and his wife's statements, evaluated the record as a whole and finds that the claimant was not "without fault" in causing and accepting the overpayment. In January 1992 the claimant would have received a pamphlet "What You Need. to Know When You Get Social Security Disability Benefits" with his award letter. In April 1995, the claimant was sent a notice explaining the TWP [Ticket to Work Program] provisions and SGA amounts. The Administration sends out information periodically concerning the substantial gainful activity amounts to the claimants receiving Disability Insurance Benefits. The claimant testified he notified the Administration every time he moved. Mr. Harsini stated their clients are notified that work affects their Disability Insurance Benefits. The claimant has a bachelor's degree and has no mental impairments. He should have known he was not due Disability Insurance Benefits when he started engaging in SGA after the TWP.
>
>           It is found, therefore, that the claimant accepted Disability Insurance Benefits which he knew or should have known to be incorrect. Accordingly, the undersigned finds that the claimant was not without fault in causing and accepting the overpayment. Inasmuch as the claimant is not without fault with respect to the condition, the conditions for relief by waiver are not met.
>
>           In view of the foregoing, the undersigned finds that the claimant was overpaid $30,582.30 in Disability Insurance Benefits and that recovery thereof is not waived.

(AR 62).

For the reasons stated below, the ALJ's decision is not supported by substantial evidence. The record reflects that plaintiff promptly notified the SSA that on May 4, 2005, he would begin working 40 hours per week at Duncan Aviation at a wage of $16.50 per hour (AR 108). In an SSA letter dated May 4, 2005, plaintiff was advised that this information "has been forwarded to a representative to determine what effect this change will have on your Social Security and/or Supplemental Security Income benefits" (AR 108). Based on this letter, it would appear that plaintiff was awaiting a response from the Agency. While the ALJ states that "[i]t was noted the claimant's trial work period months were May 2005 through January 2006," she cited no exhibit or other authority to support this statement or that plaintiff was advised of this information (AR 61).

9

In her decision, the ALJ observes that "[t]he Act and Regulations provide" the work incentive referred to as the EPE (extended period of eligibility), regarding which she provided the following explanation:

> The EPE furnishes a re-entitlement period Title II to an individual who completes 9 months of trial work period and continues to have a disabling impairment. During an EPE. an individual can be paid benefits during the re-entitlement period when his work activity falls below the SGA level. The EPE re-entitlement periods begins with the month immediately following completion of the trial work period and ends 36 months later. However, if the beneficiary is not engaging in SGA when the re-entitlement periods ends, the EPE provision allows benefits to continue until SGA is performed (or medical cessation is determined).

(AR 60-61). The ALJ, however, cites no particular statute or regulation in support of this explanation, nor does she address how the trial work period applies with respect to the Ticket to Work Program.

Other than the Notice of Proposed Decision issued on January 25, 2008, the ALJ did not cite any response from the SSA regarding a reduction in benefits due to plaintiff's employment under the Ticket to Work Program (AR 61, 73-76). On the contrary, the SSA sent plaintiff a Notice of Change in Benefits dated November 3, 2006 which *increased* his benefits (AR 109). This notice stated that:

> We checked our records to see if any benefits are necessary. We are increasing your benefit amount to give you credit for your earnings in 2005 which were not included when we figured your benefit before.

(AR 109).

Plaintiff received a similar notice dated November 2, 2007 which again *increased* his benefits, stating that:

> We checked our records to see if any benefits are necessary. We are increasing your benefit amount to give you credit for your earnings in 2006 which were not included when we figured your benefit before.

(AR 110).

The ALJ's characterization of the 2006 and 2007 letters as "cost of living" letters is neither supported by the record nor explained by the ALJ. On the contrary, the letters advised plaintiff that the SSA had recalculated his benefits based upon his earnings in 2005 and 2006, and explicitly stated that:

> The regular monthly payment shown above does not include any upcoming cost of living adjustment. We will contact you separately if there is any such increase in your benefits.

(AR 109-10). These letters – which were the SSA's only contact with plaintiff after he advised the agency of his employment with Duncan Aviation – appear consistent with plaintiff's understanding that he was acting within the parameters of the SSA's regulations.

Plaintiff contends that he was not at fault because: (1) plaintiff understood that as long as he was under the Ticket to Work program, he was allowed to work and earn as much as he wanted up to 5 years and then his disability benefits would terminate; and (2) plaintiff believed that he remained eligible to receive disability benefits because he received letters in 2006 and 2007 stating that the SSA had reviewed his case and increasing his benefit amounts (AR 71-72, 134). The ALJ's decision did not address these issues in any detail, even though they were addressed to some extent in the July 3, 2008 "Special Determination" (AR 59-63, 71-72).

While the ALJ stated that back in 1992 plaintiff "would have received a pamphlet ("What You Need to Know When you Get Social Security Disability Benefits") and that he was sent a notice in April 1995 explaining the TWP provisions and SGA amounts, there is no evidence in the record to support these statements. And although both the SSA claims representative and the ALJ opined that plaintiff should have known that he was not entitled to DIB when he engaged in

11

substantial gainful employment after participating in the Ticket to Work Program, neither the claims representative nor the ALJ cite evidence in the record to support this statement. The claims representative based her determination on the unsworn, generalized representations by Mr. Harsini that "all MRS counselors firmly explain to their clients that any work they perform can affect their Social Security Disability benefits" and "that clients are aware that there are limits to how much they can earn" (AR 72). However, the court notes that Mr. Harsini admitted that even he did not know those limits (AR 72).

Finally, the ALJ's decision includes virtually no discussion of plaintiff's testimony given at the administrative hearing (AR 205-38). For example, plaintiff testified, under oath, that MRS did not have "a staff person that might have specialized information if you ever needed it about Social Security," that no one from the SSA contacted him when he was working part-time, and that MRS did not direct him to the SSA in case he had questions about his benefit entitlement (AR 210, 221-22). Plaintiff also testified that he did not specifically ask anyone at MRS about his entitlement to benefits in light of going back to work (AR 219-20). Plaintiff further testified that "Mike Garcia [of MRS] called me a couple of times and asked me how work was going, but that was it" and that the Ticket to Work lasted five years (AR 219-20).

The ALJ's decision contains conclusory statements and in some instances lacks citation to relevant regulations and evidence, and for these reasons is not supported by substantial evidence. Under these circumstances, this matter should be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g). On remand, the Commissioner should re-evaluate the overpayment issue, considering plaintiff's participation in the TWP, whether plaintiff received the 1992 and 1995 notices referenced in the ALJ's decision, the effect of the SSA's letters increasing

benefits in 2006 and 2007, and the SSA's contact with plaintiff with respect to advice about commencing work in May 2005.

### B. Whether it was established that the failure to grant a waiver of the overpayment in this case would be contrary to "equity and good conscience"?

The ALJ did not address the issue of "equity and good conscience" because she found that plaintiff was "not without fault in causing and accepting the overpayment" (AR 63). Because of this finding, it was unnecessary for the ALJ to address the issue of "equity and good conscience," *see Morgan*, 423 F.2d at 553, and neither does this court need to reach this issue at this time.

### C. Whether Timothy Hassett is protected from claims for overpayment during the period of time he was participating in the Ticket-to-Work in Self Sufficiency Program established by 42 U.S.C. § 1320(b)-19, such protection being created by 42 U.S.C. § 425(b)?

Plaintiff contends that he was protected from the SSA's claim for overpayment because he was participating in the TWP under three statutes, 42 U.S.C. §§ 425(b), 1320b-19 and 1320b-19(i). Plaintiff's Amended Brief at pp. 7-9. Title 42 U.S.C. § 1320b-19(a) provides a general discussion of the program:

> The Commissioner shall establish a Ticket to Work and Self-Sufficiency Program, under which a disabled beneficiary may use a ticket to work and self-sufficiency issued by the Commissioner in accordance with this section to obtain employment services, vocational rehabilitation services, or other support services from an employment network which is of the beneficiary's choice and which is willing to provide such services to such beneficiary.

42 U.S.C. § 1320b-19(a).

Plaintiff relies on § 1320b-19(i) ("Suspension of disability reviews") which provides that:

>During any period for which an individual is using, as defined by the Commissioner, a ticket to work and self-sufficiency issued under this section, the Commissioner (and any applicable State agency) may not initiate a continuing disability review or other review under section 421 of this title [42 U.S.C. § 421 ("Disability determinations")] of whether the individual is or is not under a disability or a review under subchapter XVI of this chapter similar to any such review under section 421 of this title.

*Id.* at § 1320b-19(i).

Plaintiff also relies on Title 42 U.S.C. § 425(b) ("Additional rules relating to benefits based on disability"), which provides as follows:

>(b) Continued payments during rehabilitation program
>
>Notwithstanding any other provision of this subchapter, payment to an individual of benefits based on disability (as described in the first sentence of subsection (a) of this section) shall not be terminated or suspended because the physical or mental impairment, on which the individual's entitlement to such benefits is based, has or may have ceased, if--
>
>>(1) such individual is participating in a program consisting of the Ticket to Work and Self-Sufficiency Program under section 1320b-19 of this title or another program of vocational rehabilitation services, employment services, or other support services, approved by the Commissioner of Social Security, and
>>
>>(2) the Commissioner of Social Security determines that the completion of such program, or its continuation for a specified period of time, will increase the likelihood that such individual may (following his participation in such program) be permanently removed from the disability benefit rolls

*Id.* at § 425(b).

While plaintiff asserts that §§ 1320b-19(i) and 425(b) provide "significant protection for the termination of benefits where an individual is participating in a program consisting of 'Ticket to Work and Self Sufficiency' " and quotes a portion of § 425(b)(2), his brief does not address any specific provisions of the TWP as it applies to his claim, other than to assert that the TWP lasts five

years and that he is entitled to receive benefits for the full five years. Plaintiff's Brief at pp. 8-9. Defendant points out that these two statutes state only that continuing disability reviews are suspended while an individual is participating in a TWP. Defendant's Brief at pp. 12-13. *See* 20 C.F.R. § 404.1590(h) ("[i]f you are participating in the Ticket to Work program, we will not start a continuing disability review during the period in which you are using a ticket"). Defendant also points out that the issue in this case is not the suspension of continuing disability reviews but rather whether a person engages in substantial gainful activity (SGA) while on TWP and if so, the amount that his benefits should be reduced. *See Miscevich v. Secretary of Health and Human Services*, No. 94-3124, 1995 WL 222192 at *5 (6th Cir. April 13, 1995) (based upon the legislative history of 42 U.S.C. § 425(b) "it is clear that Congress' purpose was to ensure that benefits continued for those individuals who were already receiving vocational rehabilitation and who recovered before the program was completed"). *See also, Gray v. Commissioner of Social Security*, 38 Fed. Appx. 284, 285-86 (6th Cir. 2002) (same) (citing *Miscevich*).

The record reflects that plaintiff testified that, based on discussions with agency officials and MRS personnel, it was his belief that he could work for five years under the TWP (AR 218-19). While plaintiff's testimony at the administrative hearing raised issues related to the interplay between plaintiff's participation in TWP, plaintiff's work income and plaintiff's eligibility for Social Security benefits, the ALJ's decision provides virtually no discussion of these issues, which appear to be relevant to the overpayment of benefits. It is not for this court to address the issue in the first instance. Accordingly, on remand, the ALJ's decision should address the extent to which plaintiff was protected from a claim of overpayment while on TWP.

## IV.     Recommendation

For the reasons discussed, I respectfully recommend that the Commissioner's decision be **REVERSED** and **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g). On remand, the Commissioner should re-evaluate the overpayment issue, including plaintiff's participation in the TWP, whether plaintiff received the 1992 and 1995 notices referenced in the ALJ's decision, the effect of the SSA's letters increasing benefits in 2006 and 2007, the SSA's contact with plaintiff with respect to advice about commencing work in May 2005, and whether the SSA can recover any overpayment.


Dated:  July 3, 2013                                        /s/ Hugh W. Brenneman, Jr.
                                                                           HUGH W. BRENNEMAN, JR.
                                                                           United States Magistrate Judge


ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report. All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).